UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MR. JIRI PIK,                                              :    Case No. 08 CV 3909
                                                           :
            Plaintiff,                            :
                                                           :
   -v.-                                                  :    **FIRST AMENDED**
                                                           :    **COMPLAINT**
THE INSTITUTE OF INTERNATIONAL EDUCATION,   :
THE J. WILLIAM FULBRIGHT COMMISSION OF THE :
CZECH REPUBLIC and JOHN AND JANE DOES 1-10, :
                                                           :
            Defendants.                           :
------------------------------------------------------------------------X

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, Jiri Pik, by his attorneys, Karasik & Associates, LLC, and as and for his First Amended Complaint, alleges as follows:

## THE PARTIES

1.    At all times hereinafter mentioned, Plaintiff was and still is a citizen of the Czech Republic, currently residing at 2 Fann Street, EC2Y 8BR, London, United Kingdom.

2.    At all times hereinafter mentioned, Defendant Institute of International Education ("IIE") was and still is a domestic not-for-profit corporation established pursuant to the laws of and currently doing business in the State of New York and having its principal place of business at 809 United Nations Plaza, New York, NY, 10017-3580.

3.    At all times hereinafter mentioned, Defendant J. William Fulbright Commission of the Czech Republic ("the Commission") was and still is a foreign entity operating based on a bilateral agreement between the Czech Republic and the United States having its principal place of business at Komise J.W. Fulbrighta, Taboritska 23, 130 87 Praha 3, Czech Republic.

4.    At all times hereinafter mentioned, Defendants John and Jane Does 1-10 were

unknown persons, corporate entities and/or agencies of local, state or the federal government who were the agents or masters of the named defendants and who perpetrated and carried out the acts herein complained of together with the named defendants and/or are liable for the named defendants' actions as a matter of law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(2).

6. This Court has *in personam* jurisdiction over the Defendants either because they are located in New York, conduct operations within, transact business in and provide services within New York, have a principal place of business in New York City and/or have minimum contacts with New York for due process purposes.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1).

## BACKGROUND

8. Plaintiff applied in writing to Defendant IIE for Fulbright scholarship funds in the summer of 2001.

9. IIE is the global administrator of the Fulbright scholarship. It arranges, *inter alia*, academic placement for most Fulbright nominees and supervises participants during their stay in the United States.

10. The relationship between IIE and the Commission is one of principal and agent. Foreign students apply for Fulbright grants through the Binational Fulbright Commission/Foundation or the U.S. Embassy in their home countries.

11. The Fulbright scholarship process permits an applicant to select three universities for his or her studies; Plaintiff chose MIT, Harvard University and Princeton University. The

process also allows the applicant to tender private applications, which Plaintiff also did to Stanford University, Yale University, Northwestern University and the University of Chicago. All of Plaintiff's applications were submitted to the Department of Economics and sought admission into each university's Ph.D. program.

12. Plaintiff had outstanding academic credentials at the time of his application; he was among the top students at Charles University with a 4.0 grade point average and received outstanding scores on the Graduate Record Examination ("GRE").

13. In September 2001 Plaintiff attended a personal interview and later that month received correspondence from the Commission stating that he was awarded the scholarship. At the beginning of October 2001, Plaintiff accepted the offer of scholarship funds and entered into a contract with IIE in which IIE promised to provide funds to cover Plaintiff's course of designated postgraduate study in economics, including living expenses, and in return Plaintiff agreed to abide by the terms and conditions of the Fulbright program and to complete the course of study prescribed to him thereby. On numerous occasions both orally and in writing, IIE staff made the same representations to Plaintiff.

14. In the contract, Plaintiff was designated as a "grantee" entitled to specified rights and privileges set forth in published guidelines incorporated by reference therein, including among other things the right to enumerated due process protections in the event IIE decided to seek the revocation of his scholarship award.

15. Thereafter, Plaintiff expended the total sum of approximately $15,000 in reliance upon the representations made to him in the contract and in his discussions with IIE staff. These expenses included the following items: communication costs, preparation for the standardized tests (including preparation materials, test fees, result fees, time spent), opportunity costs of lost

employment opportunities, and other relevant costs.

16.     Over the next several months, however, Defendants undertook a pattern of harassment toward Plaintiff because, *inter alia,* Plaintiff would not adhere politically to the Czech party line, hence fearing that Plaintiff would expose "irregularities" in the Czech educational and political system once in the United States as a Fulbright scholar.  In so acting, Defendants violated the terms and conditions of the Fulbright scholarship by punishing Plaintiff for his political views.  Defendants also acted improperly by harassing Plaintiff once they learned of his sexual orientation.

17.     Additionally, Defendants also took steps to intentionally interfere with Plaintiff's application for studies at the aforementioned universities.  Such steps included, *inter alia,* sending incorrect GRE scores to certain universities, failing to send applications to other universities, misstating certain information and otherwise sabotaging Plaintiff's application process.

18.     Thereafter, on April 22, 2002, the Commission issued a "resolution" by which it purported "to withdraw the Commission's proposal to the J. William Fulbright Foreign Scholarship Board of Mr. Pik's participation in the Fulbright program for the academic year 2002-2003."  No specific reason was given for this action; the Commission merely made vague reference to "Mr. Pik's activities, actions and communications for the period subsequent to his recommendation as a selected candidate…"

19.     The April 22, 2002 Resolution was improper in that the Commission's own rules and regulations (including Rule 537) did not permit withdrawing the proposal in the manner undertaken.  As a selected candidate, the scholarship could not be withdrawn as done.

20.     Plaintiff then challenged the resolution by communicating both orally and in

writing with IIE and its agents and its establishing entities, such as the State Department, and demanding that he be accorded the due process protections specified in his contract and in published guidelines maintained by IIE.  However, IIE never took any action responsive to Plaintiff's claim and, in so doing, breached its contract with Plaintiff.

21.     As a result of the Commission's improper actions, IIE, acting in concert with others, denied Plaintiff the Fulbright scholarship.  Although Plaintiff was in fact admitted to the Ph.D. program in Economics at the University of Chicago and Northwestern University, Defendants misrepresented Plaintiff's status as a Fulbright scholar to both universities such that neither institution offered him financial assistance, thus preventing him from undertaking his studies there.

## COUNT I
### (Common Law Fraud)

22.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "21" as if set forth more fully and at length herein.

23.     As described above, Defendants made material misrepresentations to Plaintiff concerning the terms under which his application for a Fulbright scholarship would be reviewed, the terms of his selection and the unconditional nature of his award of said scholarship.

24.     Those misrepresentations were materially false, and Defendants knew they were false when they were made.

25.     Specifically, Defendants represented that Plaintiff was unconditionally awarded a Fulbright scholarship for his Ph.D. studies in economics at an American university.  Among other things, Defendants represented that Plaintiff's application for scholarship funds would be judged according to stated criteria on its merits and, once he became a selected candidate, that his selection could be reversed on stated grounds.  In fact, these representations were false and

5

Plaintiff's application was judged arbitrarily, discriminatorily and in a retaliatory manner.

26.     As the direct and proximate result of these misrepresentations, Plaintiff was caused to suffer damages through the expenditure of funds in preparing for and applying for said scholarship in an amount herein specified.

27.     Punitive damages are justified in this case. Defendants' material misrepresentations were made knowingly, with awareness of the adverse impact upon Plaintiff's future career and the risk to his personal safety and well-being which they represented. Damages to his reputation were foreseen as were damages in the form of severe emotional distress all as a result of Defendants' pattern of harassment and malicious acts, which continued after the scholarship was improperly withdrawn.  Said harassment and malicious acts even took place at the offices of various employers where Plaintiff worked, i.e., JP Morgan, Goldman Sachs and Bank of America and at the universities Plaintiff attended, i.e., Humboldt University and the University of Pennsylvania.

WHEREFORE, Plaintiff requests that judgment be entered as follows:

    a.     Awarding Plaintiff compensatory, consequential, punitive, liquidated and reputational damages and and damages for emotional distress (including post traumatic stress disorder), pre and post judgment interest, all in amounts to be proven at trial, but in no event less than FIVE MILLION DOLLARS;

    b.     Awarding Plaintiff his attorney's fees, costs, and such other and further relief as this Court deems just and proper.

### COUNT II
### (Breach of Contract)

28.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in

paragraphs numbered "1" through "27" as if set forth more fully and at length herein.

29. As specified herein, Defendants agreed in writing to provide scholarship funds and Plaintiff agreed to embark upon an approved course of study and to comply with applicable rules and regulations of the program, at all times furthering its interests as well as his own. Plaintiff performed all the obligations of the agreement, but Defendants breached their obligations and did not supply the funds requested.

30. As a direct and proximate result of Defendants' breach of the agreement, Plaintiff suffered damages as follows through the expenditure of funds in preparation for and during the application process.

WHEREFORE, Plaintiff requests that judgment be entered as follows:

    a. Awarding Plaintiff compensatory damages, pre and post judgment interest, all in amounts to be proven at trial;

    b. Awarding Plaintiff his attorney's fees, costs, and such other and further relief as this Court deems just and proper.

### COUNT III
**(*Quantum Meruit* and Unjust Enrichment)**

31. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "30" as if set forth more fully and at length herein.

32. In reliance upon the promises, conduct and representations of Defendants, Plaintiff was caused to perform work that inured to the benefit of Defendants and for which he has not been fairly compensated.

WHEREFORE, Plaintiff requests that judgment be entered as follows:

    a. Awarding Plaintiff compensatory damages, pre and post judgment interest, all in amounts to be proven at trial;

    b.    Awarding Plaintiff his attorney's fees, costs, and such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff requests that judgment be entered as follows:

    a.    Awarding Plaintiff compensatory damages, pre and post judgment interest, all in amounts to be proven at trial;

    b.    Awarding Plaintiff his attorney's fees, costs, and such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated:    August 4, 2008
            New York, New York

                          KARASIK & ASSOCIATES, LLC
                              Attorneys for Plaintiff

            By:          _____/s./_____
                         Sheldon Karasik, Esq. (SK-4020)
                         (A Member of the Firm)

                         Office and P.O. Address
                         777 Third Avenue, 26th Floor
                         New York, NY  10017
                         (646) 214 8157

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and complete copy of Plaintiff's First Amended Complaint was served by United States mail, postage prepaid, on August 4, 2008 upon:

            Patrick D. Bonner, Esq.
            Menz Bonner & Komar LLP
            Two Grand Central Tower
            140 East 45th Street
            New York, NY 10017

_____/s./_____
Sheldon Karasik, Esq.